IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FRANKLIN G. EALUM,

        Plaintiff,

  v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

6:11-cv-06413-MA

OPINION AND ORDER

JOHN E. HAAPALA, JR.
401 E. Tenth Avenue, Suite 240
Eugene, Oregon 97401

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

JEFFREY R. MCCLAIN
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Franklin D. Ealum, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Act. 42 U.S.C. §§ 1381-1383f. This court has jurisdiction pursuant to 42 U.S.C. §§ 1383(c)(3). For the reasons set forth below, I affirm the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

On October 18, 2005, plaintiff protectively filed an application for SSI alleging disability due to "chronic back pain, depression, seizures, memory problems, anxiety, chronic pain in left elbow and shoulder, tingling in arms and legs, [and] carpal tunnel syndrome in both hands." Tr. 91. The Commissioner denied plaintiff's application initially and upon rehearing. A hearing before an Administrative Law Judge (ALJ) was held on November 28, 2007 in Eugene, Oregon. At the hearing, plaintiff testified and was represented by a non-attorney representative. Additionally, Vocational Expert (VE) Mark A. McGowan was present throughout the hearing and testified.

On February 28, 2008, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. After the Appeals Council denied review, plaintiff timely filed a petition for review in this court.

## FACTUAL BACKGROUND

Born on May 8, 1955, plaintiff was 49 years old on the alleged onset date of disability and 52 years old on the date of the hearing. Tr. 21, 75. Plaintiff has a high school equivalency diploma, and past relevant work experience as a taxi driver. Tr. 40, 43.

Plaintiff alleges his various conditions became disabling on May 1, 2005. Plaintiff testified at the hearing and submitted a Function Report and Seizure Questionnaire. Plaintiff was evaluated by Kurt Brewster, M.D., who submitted an opinion. Additionally, Alison Prescott, Ph.D., performed and submitted a Psychological Evaluation. Bill Hennings, Ph.D., reviewed plaintiff's records and submitted a Psychiatric Review Technique and Mental Residual Functional Capacity (MRFC) Assessment. Sharon B. Eder, M.D., reviewed plaintiff's records and submitted a Physical Residual Functional Capacity (PRFC) Assessment.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to

3 - OPINION AND ORDER

show that a significant number of jobs exist in the national economy that the claimant can perform. See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the application date, October 18, 2005. See 20 C.F.R. § 416.920(b); Tr. 12.

At Step Two, the ALJ determined that plaintiff's alcohol abuse, status post left elbow fracture in July 2005, diffuse osteopenia with mechanical back pain, generalized anxiety disorder, dysthymia, and asthma were severe impairments. See 20 C.F.R. § 416.920(c); Tr. 12.

At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any listed impairment. See 20 C.F.R. §§ 416.920(d), 416.925, 416.926; Tr. 12.

The ALJ found that plaintiff had the residual functional capacity (RFC) to lift and carry a maximum of 50 pounds occasionally and 25 pounds frequently; stand and walk six hours in an eight hour workday with 15 minute breaks every two hours; and no sitting restrictions. The ALJ further limited the plaintiff to occasional flexion extension of the waist due to back pain, and occasional pulling and grasping on the left[1] due to ongoing

---

[1] In the RFC, the ALJ referenced pulling and grasping limitations on plaintiff's right side. This is a scriveners' error. Throughout the remainder of the decision the ALJ referred

4 - OPINION AND ORDER

shoulder and elbow pain, but found no fine or gross motor defects. Finally, the ALJ found that plaintiff could not have frequent interaction with the general public. Tr. 13-15.

At Step Four, the ALJ determined that plaintiff was not capable of performing past relevant work as a taxi driver. See 20 C.F.R. § 416.965; Tr. 15-16.

At Step Five, however, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, including hand packager, kitchen helper/dishwasher, cleaner/housekeeper, and assembler of small products. See 20 C.F.R. §§ 416.960(c), 416.966; Tr. 16-17. In the alternative, the ALJ found that, if limited to light exertion work, plaintiff could still perform the work of cleaner/housekeeper and assembler of small products. Tr. 17. Additionally, if plaintiff was further limited to no forceful gripping or repetitive use of the dominant left hand, the ALJ found that plaintiff could still perform work as a security guard. Id.

Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

///

///

---

to elbow and shoulder limitations on plaintiff's left side. There was no allegation or evidence of any limitations on plaintiff's right side. Thus, it is clear the RFC was intended to reflect pulling and grasping limitations on the left.

## ISSUES ON REVIEW

Plaintiff asserts the ALJ erred in four ways. First, plaintiff argues that the ALJ improperly discredited his testimony. Second, plaintiff argues that the ALJ improperly discredited the medical opinions of James Newhall, M.D., a physician who treated plaintiff on multiple occasions, and Drs. Brewster and Eder. Third, plaintiff maintains that the ALJ failed to list all of plaintiff's physical and mental conditions as severe impairments at Step Two and consider them in the RFC. Accordingly, plaintiff argues that the vocational hypothetical was invalid because it did not include all of plaintiff's limitations.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40. If the

6 - OPINION AND ORDER

evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I. Rejection of Plaintiff's Testimony

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. 20 C.F.R. § 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. Id. at 1281.

If an ALJ finds that the claimant's testimony regarding his subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th

7 - OPINION AND ORDER

Cir. 2002). The Commissioner's findings will be upheld if supported by reasonable inferences drawn from the record. <u>Baston v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004).

In his Function Report, plaintiff reported that his normal daily routine was to wake at 5:30 in the morning, eat breakfast and take medication, nap, do light duty chores around the homeless shelter in which he resides, read or walk "a couple blocks," then return to the shelter for prayers, showers, dinner, and bed. Tr. 99. Plaintiff alleged that his pain makes it hard to fall asleep, wash his head and hair, and put on pants and shoes. Tr. 100. Plaintiff reported that, despite his ability to pay bills, handle a bank account, and use checks or money orders, he needs help handling money because he spends foolishly. Tr. 102. Plaintiff further stated that before his disability he enjoyed the outdoors, but since then he has not been able to participate in outdoor activities, and the only activity he does on a regular basis is attend appointments. Tr. 103. Plaintiff stated that he can walk up to two miles at a time before having to rest 15 minutes, and can pay attention for 30 minutes. Tr. 104. Additionally, plaintiff reported having short term memory problems that interfere with his ability to follow spoken instructions. <u>Id.</u> Finally, plaintiff reported that he does not handle stress well, and becomes nervous in crowds. Tr. 105.

At the hearing, plaintiff testified that he has not been employed since July of 2005, when he worked as a taxi driver. Tr. 23. Plaintiff stated that he now spends a great deal of time reading in a secluded area at a library. Tr. 40-43.

Plaintiff reported that he could only walk "[m]aybe a half mile, I don't know, a few blocks," and that his recently diagnosed chronic obstructive pulmonary disease (COPD) causes him to become short-winded at times. Tr. 24. Plaintiff stated that his COPD causes him to cough a lot, especially during exercise, while experiencing stress, and when exposed to environmental stressors such as dust and mold. Tr. 26-27. Despite this, plaintiff testified that he smokes approximately one pack of cigarettes per day, and understood that this was not good for his COPD. Tr. 38.

Plaintiff additionally reported pain in his left arm, back, fingers, and ankles, headaches, and dental problems. Tr. 24-25. Accordingly, plaintiff reported that he had trouble gripping things with his left hand. Tr. 32. When asked, however, plaintiff could not recall if he mentioned his left hand difficulties to Dr. Brewster. Tr. 38. Plaintiff stated that after a recent fall, he began experiencing difficulties with his shoulder, and that back pain precludes him from sitting for extended periods of time. Tr. 29. Additionally, plaintiff testified that he needs a cane to walk any significant distance. Tr. 32-33.

With regard to depression, plaintiff stated that he had been trying to get help for years, but it only recently became disabling. Tr. 30-31. Because of his depression, plaintiff stated he avoids large crowds. Tr. 31. With respect to alcohol consumption, plaintiff stated that he had not had a drink for several days, but had gone through a period of excessive drinking recently. Tr. 33-34. Plaintiff stated he believes he could handle his money if he was awarded benefits. Tr. 35.

The ALJ rejected plaintiff's testimony because it was internally inconsistent, inconsistent with the record as a whole, and unsupported by objective medical evidence. Inconsistencies in plaintiff's testimony and the record are proper reasons for rejecting a claimant's testimony. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (an ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid"). Here, the ALJ cited sufficient reasons to reject plaintiff's testimony.

As the ALJ noted, despite plaintiff's report that he has trouble sitting, he told Dr. Brewster that he reads for five hours per day. Tr. 29, 164, 276.[2] At the hearing, plaintiff explained

---

[2] I acknowledge that the ALJ calls plaintiff's alleged sitting limitations "consistent to the above activities, as well as the medical evidence overall." Tr. 15. Reading the section

10 - OPINION AND ORDER

that he reads a "great deal," and does most of his reading in a secluded area of the library. Tr. 41-42. Additionally, as the ALJ noted, there is nothing in the medical record that explains plaintiff's allegedly severe sitting limitations. Tr. 15. Dr. Brewster also reported that plaintiff sat on the examination table without changing position for twenty minutes. Tr. 15, 165. The ALJ reasonably found plaintiff's testimony about his sitting limitations internally inconsistent and unsupported by the medical record.

Plaintiff also has been inconsistent in describing his alcohol use. In his evaluation with Dr. Brewster, plaintiff reported that despite his history of alcoholism, he was sober at the time of the appointment, except that he drinks one beer per week. Tr. 163. Dr. Brewster noted, however, that at the evaluation plaintiff smelled of alcohol, and when asked whether he had anything to drink that day, plaintiff stated that he had one beer. Tr. 165. Accordingly, Dr. Brewster opined that plaintiff was likely "minimizing his alcohol use." Tr. 168. Therefore, the ALJ could reasonably discount plaintiff's testimony based, in part, on his lack of candor regarding alcohol use.

---

as a whole, and noting that the RFC explicitly declined to find any sitting restrictions, it is clear this was merely a typographical error, and "consistent" should read "inconsistent". Tr. 13. This clear typographical mistake is not reversible error.

11 - OPINION AND ORDER

The ALJ further noted that plaintiff was inconsistent in describing his walking limitations, as he reported on his Function Report that he could walk two miles at a time, but testified at the hearing that he could only walk "maybe a half mile," or "a few blocks" at a time. Tr. 24, 104. Plaintiff suggested this reduction in walking capacity may be because of his alleged COPD, but the ALJ noted that, while there was apparently a diagnosis of asthma, there is no evidence of any significant treatment for any respiratory illness. Tr. 14, 24. Similarly, plaintiff represented at the hearing that he required a cane to walk any significant distance, but, as the ALJ noted, there is nothing in the record providing a basis for the necessity of a cane, or any medical evidence explaining how his condition changed between the time he presented without a cane for his evaluation with Dr. Brewster and the date of the hearing. Tr. 15, 32-33, 165.

In his Function Report, plaintiff also alleged having problems with his short term memory. Tr. 104. Because of this, plaintiff reported having trouble following verbal instructions. Id. After evaluating plaintiff, however, Dr. Prescott found that plaintiff "showed good short term memory," as he was able to report four out of four unrelated words after a five minute delay, reported what he had for dinner the night before, and what he had done on a recent holiday. Tr. 177. Thus, the ALJ appropriately discounted plaintiff's credibility based on his unsupported assertion of short

12 - OPINION AND ORDER

term memory problems. After a review of the record, I find that these reasons, taken together, are clear and convincing reasons for discounting plaintiff's testimony.

## II. Rejection of Medical Evidence

Plaintiff next argues that the ALJ erroneously discredited the opinions of Drs. Newhall, Brewster, and Eder. Plaintiff's argument is without merit.

Generally, an ALJ may only reject an uncontradicted physician's opinion upon citing clear and convincing reasons for doing so. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Where a physician's opinion is contradicted by that of another doctor, the ALJ may reject that physician's opinion upon providing specific and legitimate reasons supported by substantial evidence in the record. Id. Generally, the opinion of a treating physician is given more weight than that of a one-time examining physician, or a physician that simply reviews the record. Id. Where the ALJ credits the opinion of a physician, the ALJ must translate the plaintiff's condition as described in the physician's opinion into functional limitations in the RFC. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

First, I note that Dr. Newhall did not submit an opinion with respect to plaintiff's disability claim. Rather, the record merely contains six of Dr. Newhall's chart notes. Tr. 153-58. On August 24, 2005, Dr. Newhall wrote a note that stated, in its entirety,

13 - OPINION AND ORDER

"Light Duty; no heavy lifting [times] 2 [weeks]. [Patient] has a chip fracture of his elbow." Tr. 156. This note was written almost two months before plaintiff applied for SSI, and it appears intended to limit plaintiff's duties at his homeless shelter rather than support an as-yet existent disability claim. Moreover, considering the very brief time period involved in Dr. Newhall's note it is insignificant because it does not reflect a condition expected to last more than one year. See 42 U.S.C. § 1382c(a)(3)(A). "'[T]he ALJ is not required to discuss evidence that is neither significant nor probative.'" Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) (quoting Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)). Thus, the ALJ did not err in failing to comment on Dr. Newhall's note.

Second, contrary to plaintiff's assertion, the ALJ did not reject Dr. Brewster's opinion. To the contrary, the ALJ incorporated the limitations contained in the "Functional Assessment/Medical Source Statement" section of Dr. Brewster's opinion into the RFC virtually verbatim. Compare Tr. 169-70 with Tr. 13. Plaintiff claims that the ALJ omitted Dr. Brewster's finding that plaintiff had reduced left hand grip strength. This, too, is incorrect. Dr. Brewster measured plaintiff's grip strength using a Jamar Dynamometer. Tr. 167. Based on the results of that test, Dr. Brewster limited plaintiff to lifting and carrying "fifty pounds maximum, twenty-five pounds frequently." Tr. 169. The ALJ

14 - OPINION AND ORDER

included this limitation in the RFC. Tr. 13. Thus, the ALJ appropriately translated the limitations described by Dr. Bewster into functional limitations in the RFC. See Stubbs-Danielson, 539 F.3d at 1174.

Finally, plaintiff argues that the ALJ erred in failing to discuss the opinion of Dr. Eder, the reviewing physician. Specifically, plaintiff argues that the ALJ omitted Dr. Eder's finding that plaintiff was limited to occasional handling with his left hand. See Tr. 205. Dr. Eder reviewed Dr. Brewster's evaluation and checked that his own findings were not significantly different from the findings of treating or examining physicians. Tr. 204-05. Moreover, in the PRFC worksheet, Dr. Eder checked the same lifting and carrying limitations Dr. Brewster included. Tr. 199. Dr. Eder's opinion, then, was consistent with Dr. Brewster's. Additionally, notwithstanding the ALJ's scriveners' error, plaintiff was limited to only occasional grasping or pulling with his left hand in the RFC. Tr. 13. Thus, any error in failing to explicitly discuss Dr. Eder's opinion was harmless because the limitations described by Dr. Eder were already included in the RFC. Therefore, I conclude that the ALJ did not err in his assessment of the medical evidence.

///

///

///

15 - OPINION AND ORDER

### III. Incorporation of Limitations into the RFC

Plaintiff next argues that the ALJ failed to include several mental and physical limitations at Step Two and in the RFC. Plaintiff is incorrect in each respect.

First, plaintiff argues that the ALJ omitted his neurological impairments at Step Two and in the RFC. A CT scan of plaintiff's brain taken after an alcohol withdrawal-induced seizure suggested generalized cortical atrophy and a "small area of encephalomalacia." Tr. 151. A subsequent report, however, found that there was no evidence of any "underlying seizures disorder, focal cortical dysfunction, or widespread encephalopathy." Tr. 146. Thus, the ALJ did not err in failing to include these imaging impressions as severe impairments at Step Two to be considered in the RFC. Even if the ALJ erred in excluding these at Step Two, there is nothing in the record attributing any functional limitations to these imaging impressions. Thus, there was nothing to incorporate into the RFC, and any Step Two error would be harmless.

Second, plaintiff argues that the ALJ did not attribute any functional limitations to plaintiff's left arm and hand limitations. This is incorrect. As discussed above, the ALJ adopted Dr. Brewster's findings and incorporated the hand and arm limitations he described into the RFC. Tr. 13, 169. The ALJ also

limited plaintiff to occasional pulling and grasping with his left arm. Tr. 13. As discussed above, this was not error.

Third, plaintiff argues that the ALJ failed to include the functional limitations associated with plaintiff's back pain in the RFC. This, too, is incorrect. The ALJ included both the walking/standing and postural limitations associated with plaintiff's back pain described by Dr. Brewster in the RFC. Tr. 13, 169. As discussed above, the ALJ's translation of Dr. Brewster's opinion was not error.

Fourth, plaintiff argues that the ALJ failed to include the functional limitations associated with his alcoholism in the RFC. There is nothing in the record, however, specifically assigning any functional limitations to plaintiff's alcohol use. Accordingly, it was proper for the ALJ to refuse to assign functional limitations to plaintiff's alcohol abuse that were unsupported by substantial evidence in the record.

To the extent plaintiff complains that the ALJ erred in failing to explicitly discuss the concentration limitations noted by Dr. Prescott and reviewing psychologist Bill Hennings, Ph.D., any such error is harmless. Dr. Prescott noted some impairment with concentration, but did not state that it impaired plaintiff's ability to work in any way. Tr. 177-78. The only functional limitation expressly tied to plaintiff's concentration difficulties was Dr. Hennings's note that plaintiff could not perform detailed

17 - OPINION AND ORDER

work. Tr. 182. Considering all of the jobs that the VE testified plaintiff was capable of performing under the RFC were unskilled, Tr. 44, any failure to expressly include plaintiff's concentration limitation as described by Dr. Hennings was inconsequential to the ultimate disability analysis and therefore harmless. See Stout v. Comm'r, Soc. Sec. Admin, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that an ALJ's error may be harmless if it "was inconsequential to the ultimate nondisability determination"). Thus, the ALJ did not commit reversible error at either Step Two or in the RFC.

## IV. Adequacy of the Vocational Hypothetical

A vocational hypothetical is sufficient if it includes all of the claimant's limitations that are supported by substantial evidence in the record. See Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005). An ALJ may exclude limitations unsupported by substantial evidence in the record. Id.

I have concluded that the ALJ properly discredited plaintiff's testimony, and did not commit reversible error in weighing the medical evidence, designating severe impairments at Step Two, or incorporating plaintiff's functional limitations into the RFC. The limitations included in the RFC and hypothetical were those that the ALJ found to be credible and supported by substantial evidence in the record. Thus, the hypothetical was sufficient, and it was proper for the ALJ to rely on the VE's answer. Id.

## CONCLUSION

For the foregoing reasons, the decision of the ALJ is AFFIRMED.

IT IS SO ORDERED.

DATED this __11__ day of January, 2013.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge

19 - OPINION AND ORDER